SETTLEMENT AGREEMENT

I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of

America, acting through the Civil Division of the Department of Justice and the United States

Attorney's Office for the Western District of Virginia, the Office of Inspector General of the

United States Department of Health and Human Services ("HHS-OIG"); the United States Office

of Personnel Management ("OPM"), the United States Department of Defense TRICARE

Management Activity ("TMA"), the United States Department of Labor ("DOL") Office of

Workers' Compensation Programs ("OWCP") (collectively "the United States"); and The

Purdue Frederick Company, Inc. and Purdue Pharma L.P. (collectively "Purdue"), through their

authorized representatives.  The United States and Purdue are hereinafter referred to as "the

Parties."

II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A.     The Purdue Frederick Company, Inc., a New York corporation, and Purdue

Pharma L.P., a limited partnership under the laws of Delaware, are privately-held businesses

engaged in marketing pharmaceutical products, including OxyContin.

B.     Purdue has agreed that The Purdue Frederick Company, Inc. will enter into a plea

agreement with the United States Attorney for the Western District of Virginia (the "Plea

Agreement"), under which, if the Plea Agreement is approved by the Court, The Purdue

Frederick Company, Inc. will enter a plea of guilty pursuant to Fed. R. Crim. P. 11(c)(1)(C) to an

Information to be filed in United States of America v. The Purdue Frederick Company, Inc.

(Western District of Virginia) (the " Federal Criminal Action") that will allege that The Purdue

Frederick Company, Inc. violated 21 U.S.C. § 333(a)(2) by knowingly and fraudulently

*Attachment D to Plea Agreement*
*United States v. The Purdue Frederick Company, Inc.*

misbranding OxyContin as being less addictive, less subject to abuse and diversion and less likely to cause tolerance and withdrawal problems than other pain medications.

      C.     The United States contends that Purdue caused to be submitted claims for payment for OxyContin to the following "Federal government payors": the Medicaid Program, established pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v; the TRICARE Program (formerly known as the Civilian Health and Medical Program of the Uniformed Services ("CHAMPUS")), 10 U.S.C. §§ 1071-1110, which is administered by the Department of Defense through TMA; the Federal Employees Health Benefits Program ("FEHBP"), which is administered by OPM; and the DOL programs under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"), 42 U.S.C. § 7384 *et seq.*, and the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 901 *et seq.*, administered by the DOL's Office of Workers' Compensation Programs ("OWCP"); and the United States alleges that Purdue caused purchases of OxyContin by the Department of Veterans Affairs ("DVA").

      D.     The United States contends that it has certain civil claims against Purdue for, during the time period from 1995 through 2005, engaging in the following conduct with respect to the marketing of OxyContin (hereinafter referred to as the "Covered Conduct"):  The United States alleges that Purdue misbranded the drug OxyContin with the intent to defraud or mislead in violation of 21 U.S.C. § 333(a)(2).  Specifically, the Government alleges that Purdue marketed OxyContin as less subject to abuse, illicit use and diversion and as less addictive and less likely to cause tolerance and withdrawal than other pain medications and that Purdue knew that these marketing claims were false and misleading, causing damage to Federal government payors.

–2–

E.    The United States contends also that it has certain administrative claims against Purdue for engaging in the Covered Conduct, as specified in Paragraphs 3-6 and 8-9, below.

F.    This Agreement is neither an admission of liability by Purdue (with the exception of such admissions as The Purdue Frederick Company, Inc. makes in connection with any guilty plea to the Information referenced in Paragraph B above and accepted by the Court) nor a concession by the United States that its claims are not well founded.

G.    To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

III.    TERMS AND CONDITIONS

NOW, THEREFORE, in reliance on the representations contained herein and in consideration of the mutual promises, covenants, and obligations in this Agreement, and for good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

1.    Purdue shall pay to the United States the sum of $100,615,797.25, plus interest at the rate of 4.75% per annum ($13,093.84 per day) on $100,615,797.25 from the date of the entry of the plea by The Purdue Frederick Company, Inc. in the Federal Criminal Action described in Preamble Paragraph B and continuing until and including the day before complete payment is made pursuant to this Agreement (the "Settlement Amount").  This sum shall constitute a debt immediately due and owing to the United States on the satisfaction of the conditions of payment set forth in Subparagraph A of this Paragraph.  This debt is to be discharged by payments to the United States under the following terms and conditions:

—3—

A.      Purdue shall pay the Settlement Amount to the United States by electronic funds transfer no later than seven (7) business days after the Court accepts the plea of and imposes the agreed-upon disposition on The Purdue Frederick Company, Inc. in the Federal Criminal Action described in Preamble Paragraph B.  The United States shall provide Purdue with written payment instructions in order for it to make the electronic funds transfer.

B.      If the plea of The Purdue Frederick Company, Inc. pursuant to Fed. R. Crim. P. 11(c)(1)(C) in the Federal Criminal Action described in Preamble Paragraph B is not accepted by the Court or the Court does not impose the agreed upon disposition for whatever reason, this Agreement shall be null and void at the option of either the United States or Purdue. If either the United States or Purdue exercises this option, which option shall be exercised by notifying all Parties, through counsel, in writing within ten (10) business days of the Court's decision, the Parties will not object and this Agreement will be rescinded.  If no party objects, Purdue shall pay the Settlement Amount to the United States within fourteen (14) business days of the Court's decision.  If this Agreement is rescinded, Purdue will not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any such civil or administrative claims, actions or proceedings which are brought by the United States within 90 calendar days of notification to all other Parties of that rescission, except to the extent such defenses were available before March 29, 2006.

2.      Subject to the exceptions in Paragraph 7, below, in consideration of the obligations of Purdue set forth in this Agreement, conditioned upon Purdue's full payment of the Settlement Amount, subject to Paragraph 17 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under

–4–

this Agreement), the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release Purdue and its current and former directors, officers, employees, affiliates, owners, predecessors, successors and assigns from any civil or administrative monetary claim the United States has or may have under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any other statute creating causes of action for civil damages or civil penalties which the Civil Division of the United States Department of Justice has authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, § 0.45(d); a disgorgement theory or the common law or equitable theories of payment by mistake, unjust enrichment, and fraud for the Covered Conduct.

     3.    In consideration of the obligations of Purdue set forth in this Agreement and the Corporate Integrity Agreement (CIA) entered into between HHS-OIG and Purdue Pharma L.P., conditioned upon Purdue's full payment of the Settlement Amount, and subject to Paragraph 17, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the HHS-OIG agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Purdue Pharma L.P. under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in Paragraph 7, below, and as reserved in this Paragraph.  The HHS-OIG expressly reserves all rights to comply with any statutory obligations to exclude Purdue from Medicare, Medicaid, or other Federal health care

*Attachment D to Plea Agreement*
*United States v. The Purdue Frederick Company, Inc.*

programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the HHS-OIG from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

4.      In consideration of the obligations of Purdue set forth in this Agreement, conditioned upon Purdue's full payment of the Settlement Amount, and subject to Paragraph 17 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), TMA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against Purdue Pharma L.P. under 32 C.F.R. § 199.9 for the Covered Conduct, except as reserved in Paragraph 7, below, and as reserved in this Paragraph. TMA expressly reserves authority to exclude The Purdue Frederick Company, Inc. from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii), based upon the Covered Conduct. Nothing in this Paragraph precludes the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

5.      In consideration of the obligations of Purdue set forth in this Agreement, conditioned upon Purdue's full payment of the Settlement Amount, and subject to Paragraph 17 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), OPM agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking debarment from FEHBP against Purdue Pharma L.P.  under 5 U.S.C. § 8902a or 5 C.F.R. Part 970 for the

–6–

Covered Conduct, except as reserved in Paragraph 7, below, and except if excluded by the HHS-

OIG pursuant to 42 U.S.C. § 1320a-7(a). OPM expressly reserves authority to debar The Purdue

Frederick Company, Inc. from the FEHBP under 5 U.S.C. § 8902a(b) based upon the Covered

Conduct. Nothing in this Paragraph precludes OPM from taking action against entities or

persons, or for conduct and practices, for which claims have been reserved in Paragraph 7,

below.

6.     In consideration of the obligations of Purdue set forth in this Agreement,

conditioned upon Purdue's full payment of the Settlement Amount, and subject to Paragraph 17

below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of

this Agreement or any payment made under this Agreement), the OWCP of the DOL agrees to

release and refrain from instituting, directing, or maintaining any administrative action seeking

exclusion from the FECA and EEOICPA programs and debarment from the BLBA program

against Purdue Pharma L.P. under 20 C.F.R. §§ 10.815, 30.715 and 702.431 for the Covered

Conduct, except as reserved in Paragraph 7, below, and except if excluded by the HHS-OIG

pursuant to 42 U.S.C. § 1320a-7(a). The OWCP of the DOL expressly reserves authority to

exclude The Purdue Frederick Company, Inc. from the FECA and EEOICPA programs and

debar Purdue Frederick Company, Inc. from the BLBA program under 20 C.F.R. §§ 10.815,

30.715 and 702.431 for the Covered Conduct. Nothing in this Paragraph precludes the OWCP of

the DOL from taking action against entities or persons, or for conduct and practices, for which

claims have been reserved in Paragraph 7, below.

7.      Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including Purdue) are the following:

a.      Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.      Any criminal liability;

c.      Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.      Any liability based upon such obligations as are created by this Agreement;

f.      Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

g.      Any liability or claims for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

h.      Any liability for failure to deliver goods or services due.

8.      HHS-OIG Exclusion.

A.      In compromise and settlement of the rights of HHS-OIG to exclude The Purdue Frederick Company, Inc. pursuant to 42 U.S.C. § 1320a-7(a)(3) based on an agreement to plead guilty to 21 U.S.C. § 333(a)(2) described in Paragraph B of the Preamble above, and 42 U.S.C. §1320a-7(b)(7) based upon the Covered Conduct described in Paragraph D of the

- 8 -

Preamble above, The Purdue Frederick Company, Inc. agrees to be excluded under these

statutory provisions from Medicare, Medicaid, and all other Federal health care programs, as

defined in 42 U.S.C. § 1320a-7b(f) for a period of twenty-five (25) years.  The exclusion shall be

effective on the date on which the Court accepts the plea of and imposes the agreed-upon

disposition on The Purdue Frederick Company, Inc. in the Federal Criminal Action described in

Preamble Paragraph B.

        B.     Such exclusion shall have national effect and shall also apply to all other

federal procurement and nonprocurement programs.  Federal health care programs shall not pay

anyone for items or services, including administrative and management services, furnished,

ordered, or prescribed by The Purdue Frederick Company, Inc. in any capacity while The Purdue

Frederick Company, Inc. is excluded.  This payment prohibition applies to The Purdue Frederick

Company, Inc. and all other individuals and entities (including, for example, anyone who

employs or contracts with The Purdue Frederick Company, Inc.).  The exclusion applies

regardless of who submits the claim or other request for payment.  The Purdue Frederick

Company, Inc. shall not submit or cause to be submitted to any Federal health care program any

claim or request for payment for items or services, including administrative and management

services, furnished, ordered, or prescribed by The Purdue Frederick Company, Inc. during the

exclusion.  Violation of the conditions of the exclusion may result in criminal prosecution, the

imposition of civil monetary penalties and assessments, and an additional period of exclusion.

The Purdue Frederick Company, Inc. further agrees to hold the Federal health care programs,

and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items

or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective

date of the exclusion.  The Purdue Frederick Company, Inc. waives any further notice of the

exclusion under 42 U.S.C. § 1320a-7(a)(3) and 42 U.S.C. § 1320a-7(b)(7) and agrees not to

contest such exclusion either administratively or in any state or federal court.

        C.     Reinstatement to program participation is not automatic.  If The Purdue

Frederick Company, Inc. wishes to be reinstated, The Purdue Frederick Company, Inc. must

submit a written request for reinstatement to the HHS-OIG in accordance with the provisions of

42 C.F.R. §§ 1001.3001-.3005.  Such request may be made to the HHS-OIG no earlier than 120

days prior to the expiration of the minimum period of exclusion.  Reinstatement becomes

effective upon application by The Purdue Frederick Company, Inc., approval of the application

by the HHS-OIG, and notice of reinstatement by the HHS-OIG.  Obtaining another license,

moving to another state, or obtaining a provider number from a Medicare contractor, a state

agency, or a Federal health care program does not reinstate The Purdue Frederick Company,

Inc.'s eligibility to participate in these programs.

        9.     OPM Mandatory Debarment.

        A.     In compromise and settlement of the right of OPM to debar The Purdue

Frederick Company, Inc. pursuant to 5 U.S.C. §8902a(b) based on an agreement to plead guilty

to 21 U.S.C. § 333(a)(2) described in Paragraph B of the Preamble above, The Purdue Frederick

Company, Inc. agrees to be debarred under these statutory provisions from FEHBP for the same

period of time it is excluded from Medicare, Medicaid and the other Federal health care

programs as specified in Paragraph 8 above.  The debarment shall be effective on the date on

which the Court accepts the plea of and imposes the agreed-upon disposition on The Purdue

Frederick Company, Inc. in the Federal Criminal Action described in Preamble Paragraph B.

–10–

B.      The Purdue Frederick Company, Inc. waives any further notice of the debarment under 5 U.S.C. § 8902a(g) and (h) and 5 C.F.R. § 890.1006 and agrees not to contest such debarment either administratively or in any state or federal court.

10.     Purdue waives and shall not assert any defenses Purdue may have to any criminal prosecution or administrative action relating to the Covered Conduct, which defenses may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this Paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11.     Purdue fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Purdue has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any state or federal government healthcare program payor or contractor related to the Covered Conduct; and Purdue agrees not to resubmit to any such payor or contractor any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

13.     Purdue agrees to the following:

–11–

a.    <u>Unallowable Costs Defined:</u>  that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395ggg and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Purdue, its present or former officers, directors, employees, owners, shareholders, affiliates and agents in connection with the following shall be "unallowable costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, FEHBP, and any programs administered by the DVA and DOL:

(1)    the matters covered by this Agreement, any related agreements with any states, and any related plea agreements with Purdue or its current or former employees, officers or directors;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)    Purdue's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4)    the negotiation and performance of this Agreement, any related agreements with any states, and any related plea agreements with Purdue or its current or former employees, officers or directors;

(5)    the payment (including, but not limited to, any costs and attorneys fees) Purdue makes to the United States pursuant to this Agreement, any related agreements with

–12–

any states, and any related plea agreements with Purdue or any of its employees, officers or directors; and

      (6)    the negotiation of, and obligations undertaken pursuant to the CIA, including to:

      (i)    retain independent review organization(s) to perform annual reviews as described in Section III of the CIA; and

      (ii)    prepare and submit reports to the HHS-OIG.

However, nothing in this Paragraph 13.a.(6) that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Purdue. (All costs described or set forth in this Paragraph 13.a. are hereafter "unallowable costs.")

      b.    <u>Future Treatment of Unallowable Costs:</u>  These unallowable costs shall be separately determined and accounted for by Purdue, and Purdue shall not charge such unallowable costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such unallowable costs through any cost report, cost statement, information statement, or payment request submitted by Purdue or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, FEHBP or any programs administered by DVA and DOL.

      c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Purdue further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, and any programs administered by DVA and DOL, any

–13–

unallowable costs (as defined in this Paragraph) included in payments previously sought by Purdue or any of its owners, subsidiaries or affiliates from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Purdue or any of its owners, subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs.  Purdue agrees that the United States, at a minimum, shall be entitled to recoup from Purdue any overpayment plus applicable interest and penalties as a result of the inclusion of such unallowable costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Purdue or any of its owners, subsidiaries or affiliates on the effect of inclusion of unallowable costs (as defined in this Paragraph) on Purdue's or any of its owners', subsidiaries' or affiliates' cost reports, cost statements, or information reports.  Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine or reexamine Purdue's books and records to determine that no unallowable costs have been claimed in accordance with the provisions of this Paragraph.

14.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15, below.

*Attachment D to Plea Agreement*
*United States v. The Purdue Frederick Company, Inc.*

15.   Purdue waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16.   Purdue warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following its payment to the United States of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Purdue, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Purdue was or became indebted, on or after the date of this transfer, all within the meaning of 11 U.S.C. § 548(a)(1).

17.   If, within 91 days of the Effective Date of this Agreement or any payment made under this Agreement, Purdue commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Purdue's debts, or seeking to adjudicate Purdue as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Purdue or for all or any substantial part of Purdue's assets, Purdue agrees as follows:

–15–

      a.  Purdue's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. §§ 547 or 548, and Purdue shall not argue or otherwise take the position in any such case, proceeding, or action that:  (i) Purdue's obligations under this Agreement may be avoided under 11 U.S.C. §§ 547 or 548; (ii) Purdue was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States hereunder; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Purdue.

      b.  If Purdue's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement, and bring any civil and/or administrative claim, action, or proceeding against Purdue for the claims that would otherwise be covered by the releases provided in Paragraphs 2-6, above.  If the United States chooses to do so, Purdue agrees that for purposes only of any case, action, or proceeding referenced in the first clause of this Paragraph, (i) any such claims, actions, or proceedings brought by the United States (including any proceedings to exclude or debar Purdue from participation in Medicare, Medicaid, or other Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceeding described in the first clause of this Paragraph, and Purdue shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Purdue shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the United States within 90

–16–

calendar days of written notification to Purdue that the releases herein have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on March 29, 2006; and (iii) the United States has a valid claim against Purdue in the amount of at least $100,615,797.25, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

        c.      Purdue acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

    18.    Except as expressly provided to the contrary in this Agreement, each Party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

    19.    Purdue represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

    20.    This Agreement is governed by the laws of the United States.  The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the Western District of Virginia, except that disputes arising under the CIA shall be resolved exclusively under the dispute resolution provisions in the CIA.

    21.    This Agreement and the Plea Agreement described in the Preamble, constitute the complete agreement between the Parties with regard to the Covered Conduct.  This Agreement may not be amended except by written consent of all the Parties, except that only Purdue and

–17–

HHS-OIG must agree in writing to a modification of the CIA, without the consent of any other party to this Agreement or the Plea Agreement.

22.     The individuals signing this Agreement on behalf of Purdue represent and warrant that they are authorized by Purdue to execute this Agreement.  The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

23.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24.     This Agreement is binding on Purdue's successors, transferees, heirs, and assigns.

25.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

PETER D. KEISLER
Assistant Attorney General

DATED: 5/9/07

BY:

JOYCE R. BRANDA
Director
CAROL LYNN WALLACK
Trial Attorney
Commercial Litigation Branch

−18−

Civil Division
U.S. Department of Justice

JOHN L. BROWNLEE
United States Attorney,
Western District of Virginia

DATED: 5-9-07          BY: *Julie C. Dudley*
                            JULIE DUDLEY
                            First Assistant United States Attorney
                            United States Attorney's Office
                            Western District of Virginia


DATED:_____        BY: _____
                            GREGORY E. DEMSKE
                            Assistant Inspector General for
                              Legal Affairs
                            Office of Counsel to the
                              Inspector General
                            Office of Inspector General
                            United States Department of
                              Health and Human Services


DATED:_____        BY: _____
                            LAUREL C. GILLESPIE
                            Deputy General Counsel
                            TRICARE Management Activity
                            United States Department
                              of Defense


DATED:_____        BY: _____
                            KATHLEEN McGETTIGAN
                            Deputy Associate Director
                            Center for Retirement &
                              Insurance Services

–19–

Civil Division
U.S. Department of Justice

JOHN L. BROWNLEE
United States Attorney,
Western District of Virginia

DATED:_____          BY:_____

JULIE DUDLEY
First Assistant United States Attorney
United States Attorney's Office
Western District of Virginia

DATED: 5/8/07            BY:_____

GREGORY E. DEMSKE
Assistant Inspector General for
   Legal Affairs
Office of Counsel to the
   Inspector General
Office of Inspector General
United States Department of
   Health and Human Services

DATED:_____          BY:_____

LAUREL C. GILLESPIE
Deputy General Counsel
TRICARE Management Activity
United States Department
   of Defense

DATED:_____          BY:_____

KATHLEEN McGETTIGAN
Deputy Associate Director
Center for Retirement &
   Insurance Services

–19–

Civil Division
U.S. Department of Justice

JOHN L. BROWNLEE
United States Attorney,
Western District of Virginia


DATED:_____          BY:_____
                              JULIE DUDLEY
                              First Assistant United States Attorney
                              United States Attorney's Office
                              Western District of Virginia


DATED:_____          BY: _____
                              GREGORY E. DEMSKE
                              Assistant Inspector General for
                                Legal Affairs
                              Office of Counsel to the
                                Inspector General
                              Office of Inspector General
                              United States Department of
                                Health and Human Services


DATED: 9 may 2007          BY: _____
                              LAUREL C. GILLESPIE
                              Deputy General Counsel
                              TRICARE Management Activity
                              United States Department
                                of Defense


DATED:_____          BY: _____
                              KATHLEEN McGETTIGAN
                              Deputy Associate Director
                              Center for Retirement &
                                Insurance Services

Purdue Frederick Company, Inc. and Purdue Pharma L.P. Settlement Agreement

–19–

Civil Division
U.S. Department of Justice

JOHN L. BROWNLEE
United States Attorney,
Western District of Virginia


DATED:_____          BY:_____
                              JULIE DUDLEY
                              First Assistant United States Attorney
                              United States Attorney's Office
                              Western District of Virginia


DATED:_____          BY:_____
                              GREGORY E. DEMSKE
                              Assistant Inspector General for
                               Legal Affairs
                              Office of Counsel to the
                               Inspector General
                              Office of Inspector General
                              United States Department of
                               Health and Human Services


DATED:_____          BY:_____
                              LAUREL C. GILLESPIE
                              Deputy General Counsel
                              TRICARE Management Activity
                              United States Department
                               of Defense


DATED: 5/8/07           BY: _Kathleen McGettigan_
                              KATHLEEN McGETTIGAN
                              Deputy Associate Director
                              Center for Retirement &
                               Insurance Services


–19–

United States Office of
Personnel Management

DATED: 5/8/07                    BY: _____
                                      J. DAVID COPE
                                      Assistant Inspector General
                                          for Legal Affairs
                                      United States Office of
                                          Personnel Management

DATED: _____                BY: _____
                                      NANCY M. FLYNN
                                      Deputy Director
                                      Office of Workers'
                                          Compensation Programs
                                      United States Department of Labor


                                THE PURDUE FREDERICK COMPANY,
                                INC. and PURDUE PHARMA L.P.


DATED: _____                BY: _____
                                      ROBIN E. ABRAMS
                                      Vice President and Director of
                                      The Purdue Frederick Company, Inc.
                                      and Vice President and Associate General
                                      Counsel of Purdue Pharma L.P.


DATED: _____                BY: _____
                                      HOWARD M. SHAPIRO
                                      Wilmer Cutler Pickering Hale
                                          and Dorr LLP


–20–

_Attachment D to Plea Agreement_
_United States v. The Purdue Frederick Company, Inc._

United States Office of
Personnel Management


DATED:_____          BY: _____
                              J. DAVID COPE
                              Assistant Inspector General
                                for Legal Affairs
                              United States Office of
                                Personnel Management


DATED: 5/7/07            BY: _____
                              NANCY M. FLYNN
                              Deputy Director
                              Office of Workers'
                                Compensation Programs
                              United States Department of Labor


                         THE PURDUE FREDERICK COMPANY,
                         INC. and PURDUE PHARMA L.P.


DATED:_____          BY: _____
                              ROBIN E. ABRAMS
                              Vice President and Director of
                              The Purdue Frederick Company, Inc.
                              and Vice President and Associate General
                              Counsel of Purdue Pharma L.P.


DATED:_____          BY:_____
                              HOWARD M. SHAPIRO
                              Wilmer Cutler Pickering Hale
                                and Dorr LLP


–20–

United States Office of
Personnel Management


DATED:_____                    BY: _____
                                        J. DAVID COPE
                                        Assistant Inspector General
                                           for Legal Affairs
                                        United States Office of
                                           Personnel Management


DATED:_____                     BY:_____
                                        NANCY M. FLYNN
                                        Deputy Director
                                        Office of Workers'
                                           Compensation Programs
                                        United States Department of Labor


                                   THE PURDUE FREDERICK COMPANY,
                                   INC. and PURDUE PHARMA L.P.


DATED: 5.7.07                      BY: _____
                                        ROBIN E. ABRAMS
                                        Vice President and Director of
                                        The Purdue Frederick Company, Inc.
                                        and Vice President and Associate General
                                        Counsel of Purdue Pharma L.P.


DATED: 5-8-07                      BY: _____
                                        HOWARD M. SHAPIRO
                                        Wilmer Cutler Pickering Hale
                                           and Dorr LLP


_____

–20–


*Attachment D to Plea Agreement*
*United States v. The Purdue Frederick Company, Inc.*