IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF VIRGINIA

ABINGDON DIVISION

CLERK'S OFFICE U.S. DIST COURT
AT ABINGDON. VA
FILED

JUL 1 8 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE 1:07CR0029 |
| | * | |
| V | * | MOTION TO ASSERT VICTIM'S |
| | * | RIGHTS UNDER 18 U.S.C. §3771 |
| THE PURDUE FREDERICK | | (D)(3) and U.S.S.G. §6A1.5 |
| COMPANY, INC., ET AL. | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Comes now the Victim, Jane Doe, by and through her attorney, Louis Dene, who files this motion asserting her victim's rights and states as follows:

## GENERAL NATURE OF THE CHARGES

The information filed May 10, 2007 charges Purdue Frederick Company (hereinafter "Purdue") with the felony offense of misbranding OxyContin with the intent to defraud of mislead under Count One of the Information. Count Two charges Michael Friedman, Howard R. Udell, and Paul Goldenheim (hereinafter "individual defendants") of the misbranding of OxyContin. As set forth in the Information in Paragraph 7, the purpose of the Food and Drug Administration is "for protecting the public health by ensuring the safety, efficacy, and security of human drugs." In misbranding, it is the members of the public who were endangered by the Defendants' criminal acts of misbranding. As charged in the information, the Purdue and individual defendants violated the drug laws including in the promotion of OxyContin being less addictive, less

subject to abuse and diversion, and less likely to cause tolerance and withdrawal than other pain medications.

As a direct and proximate result of those criminal acts, doctors prescribed OxyContin, consumers purchased and paid for OxyContin and suffered the consequences of the misbranding, and governmental and non-governmental insurance entities covered some or all of the costs for certain consumer purchasers.[1]

## JANE DOE IS AN IDENTIFIABLE VICTIM OF THE DEFENDANTS

Jane Doe[2] is a victim under the Crime Victims' Rights Act, 18 U.S.C. §3771(e), which defines a victim as, "a person directly and proximately harmed as a result of a Federal offense . . ." Senator Kyl, the primary sponsor of the 18 U.S.C. §3771, (hereinafter "CVRA") stated: "This is an intentionally broad definition because all victims of crime deserve to have their rights protected, whether or not they are the victim of the count charged." 150 CONG. REC. S10, 912 (daily ed. Oct. 9, 2004) (statement of Senator Kyl). "Direct harm" occurs where an individual is harmed by a defendant's "'conduct underlying an element of the offense of conviction.'" *United States v. Sharp*, 463 F. Supp. 2d 556, 564-65 (4th Cir. 2006) (quoting *United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996) (construing a virtually identical statutory definition of "victim" found

---

[1] *Cf. United States v. Lane Labs-USA, Inc.*, 427 F.3d 219, 229 (3d Cir. 2005). Restitution that reimburses consumers who paid for drugs, and may have been defrauded or deceived about their effectiveness, restores aggrieved parties to the same economic position they enjoyed before the Act was violated. This strengthens the financial protection offered to the public by the FDCA and enhances consumer confidence in the drug market.
[2] Jane Doe requests that her privacy be protected under 18 U.S.C. §3771(a)(8) and that her name be disclosed only to the Court, parties, and probation office as she does not want members of the public to know that she is addicted to OxyContin. She stands ready, willing, and able to present herself to the court if an evidentiary challenge is made to her status as a victim that the Court cannot resolve by law without her presence and an evidentiary hearing. For the purpose of this Motion, she incorporates her victim impact statement as well as her restitution affidavit.

in the Mandatory Victims' Restitution Act (MVRA), 18 U.S.C. § 3663A(a)(2)).[3] When analyzing "proximate harm," the critical inquiry is whether an individual's injury was the foreseeable result of defendant's conduct. *See id.* at 565 (explaining that "[f]oreseeablity is at the heart of proximate harm").

Defendants are pleading guilty to a offenses within the Title 21 of the Food, Drug and Cosmetic Act (FDCA). A "primary purpose" of the FDCA is to protect "consumer health and safety," which includes "protecting consumer's economic interests." *United States v. Lane Labs-USA*, 427 F.3d 219 (3d Cir. 2005). Specifically, Purdue is pleading guilty to felony misbranding of a drug, which has three elements: (1) introducing a drug—OxyContin—into interstate commerce, 21 U.S.C. §331(a); (2) that is misbranded with a "[f]alse or misleading label," *id.* at § 352(a); and (3) defendants introduced that mislabeled drug into interstate commerce with the "intent to defraud or mislead." *Id.* at § 333(a). In this case defendants made misrepresentations to health care providers, telling them that OxyContin was safer and less addictive than other available pain medication. Relying on the misbranding of OxyContin, a medical provider prescribed OxyContin to Jane Doe. Despite using OxyContin as prescribed, Jane Doe subsequently became addicted to OxyContin. As a result, Jane Doe has expended significant sums of money to purchase OxyContin; most of those expenses have been out-of-pocket because she has no insurance. She has also incurred counseling expenses to cope with her addiction and will have future expenses related to treatment and detoxification. Because

---

[3] Although *Sharp* quotes language from *Blake* explaining that "victim" status arises from defendant's "'conduct underlying an element of the offense of *conviction*.'" *United States v. Sharp*, 463 F. Supp. 2d 556, 564-65 (4th Cir. 2006) (emphasis added), it would be a misapplication of the CVRA to require a conviction because under the Act rights attach after an offense is committed against an individual, not when defendant is convicted. *See* 18 U.S.C. §3771(d)(3) (providing that rights may be asserted "if no prosecution is underway, in the district court in the district in which the crime occurred").

she is a "victim" who has been "directly and proximately harmed" as the result of defendant's conduct underlying the offense of misbranding—i.e. she would not be addicted to OxyContin "but for" defendant's misbranding and her addiction was the foreseeable result of defendant's misrepresentations to health care providers—Jane Doe is entitled to all of the substantive rights afforded by the CVRA.

## GENERAL OBLIGATIONS OF THE GOVERNMENT UNDER 18 U.S.C. 3771(c)[4]

A. 18 U.S.C. §3771(c)(1) provides that officers and employees of the Department of Justice and other departments and agencies of the United States engaged in the detection, investigation, or prosecution of crime shall make their best efforts to see that crime victims are notified of, and accorded, the rights described in 18 U.S.C. §3771(a).

In regard to this obligation, the Court asked the Government Question 2: "What effort has the Government undertaken in this case to comply with the Crime Victims Rights Act, 18 U.S.C. *§3771, and in particular, the right to notice to individual victims of court proceedings and the right to be reasonably heard by the court?*" In reviewing the Government's response to Question 2, it is apparent that the Government did not entertain any action. Rather, the Government indicated that "*The United States does not have the ability to provide notice to all individual victims of court proceeding because it cannot properly and completely identify all of those who may be 'crime victims' as defined by statute.*" Other federal jurisdictions have made the effort even where there are thousands of victims. Even if all victims could not be notified, many victims might be identified. Establishing a toll-free number, advertising in a national newspaper,

---

[4] Specific violations by the Government of the CVRA will be addressed in relation to the rights under 18 U.S.C. §3771(a). *Infra.*

contacting the victims in the actions referenced the Defendants' answers to Court's

Questions 13 and 14 are just a few of the means which could have identified victim who

could be entered in the United States Victim Notification System. e.g. *United States v.*

*Turner*, U.S. Dist. Court, West. Dist. of Washington, Docket No. CR-05-355C,

http://www.usdoj.gov/criminal/vns/docs/2007/may/05-24-07tturner-order.pdf, (2007)

(government satisfied it obligation by mailing to 16,000 potential victims and could

maintain its obligation by maintaining and continuing updating the United States Victim

Notification System); *United States v. Causey and Skilling*, U.S. Dist. Court, South. Dist.

of Texas, Docket No. H-04-025-SS,

http://www.txs.uscourts.gov/notablecases/enron/404cr25/victim_order.pdf, (2006)

(ordering them to publish a copy of the court notice in the Houston Chronicle as well as

one national paper.); *United States v. Stokes*, 2007 U.S. Dist. LEXIS 48177, 1-2 (D.

Tenn. 2007) (posting a link on the U.S. Attorney's website, providing a toll-free number,

and publishing a legal notice in national newspaper to notify 35,000 potential victims).

*See also, United States v. Riggs*, 409 F.3d 555, 559 (2d Cir. 2005).

Moreover, the Government as part of the plea bargain, could have demanded that

the defendant's pay up to $20,000 each for a total of $80,000 to require the defendants to

give reasonable notice and explanation of the conviction in a form that the Court would

approve under 18 U.S.C. § b 3555.

In failing to answer the question, this Court should find that the Government failed to make any effort.[5] In that no effort was made, the Government cannot be deemed to have satisfied the best effort obligation required by law.[6] Regarding victim Jane Doe, the Government did not make any effort, to her knowledge, to contact her.

B. Under 18 U.S.C. § 3771(c)(2), the prosecutor shall advise the crime victim that the crime victim can seek the advice of an attorney with respect to the rights described in subsection (a).

Since the Government made no efforts to ascertain the victims, the Government cannot have notified victims in general of the right to seek advice of an attorney in general. Regarding Victim, Jane Doe, the Government failed to make *any* effort to her knowledge to advise her that she could seek the advice of an attorney.

## GENERAL OBLIGATIONS OF THE COURT [7]

A.          Under the Crime Victims' Rights Act (CVRA)

Under the CVRA, the Court has several general obligations regarding victims:

1.   Under 18 U.S.C. §3771(b)(1), the Court shall ensure that the crime victim is afforded the rights described in 18 U.S.C. §3771(a). *United*

---

[5] In fact, since the Government made no apparent effort, a reasonable inference is that the Government did not want victims to know in order to hinder victims from making claims and shine a light on the plea agreement that benefited the Government and ignored the rights and interests of individual victims.
[6] Perhaps it is true that the Government does not have the ability to notify all of the victims, but in failing to make an effort, one will never know.
[7]   Specific obligations of the Court will be addressed in relation to specific issues. *Infra.*

*States v. Turner*, 367 F. Supp. 2d 319, 323 (D.N.Y. 2005) (the CVRA requires at least some proactive procedure designed by the court to ensure victims' rights).

2. Under 18 U.S.C. §3771(d)(3), the Court is required to take up and decide any motion (such as this motion filed by victim Jane Doe) forthwith.

3. Under 18 U.S.C. §3771(b)(1), the Court is required to state on the record the reasons for any decision denying relief under the CVRA (such as this motion filed by victim Jane Doe).

B.    Regarding pleas, sentences, stipulations, and the sentencing guidelines.

Under U.S.S.G. §6B1.4, the Commentary indicates "the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation together with the results of the presentence investigation, and any other relevant information." Under U.S.S.G. §6A1.5, the Court shall ensure that the crime victim is afforded the rights under the CVRA and any other provision of federal law pertaining to the treatment of crime victims.

Jane Doe, as indicated herein, disputes various proposed stipulations both on factual and legal grounds and asks this Court to determine those under the CVRA. Jane Doe presents her statement and affidavit not only for the purposes of the July 20, 2007 non-evidentiary hearing, but also as relevant information under U.S.S.G. §6A1.3. If the

Court does not accept the material submitted by Jane Doe, she requests an evidentiary hearing regarding the proffered material in her statement and affidavit.

The Court should fully consider each point raised by Victim, Jane Doe, and make specific findings and if denied, fully state on the record the reason for said denials, e.g. *United States v. Rhynes*, 206 F.3d 349, 382 (4th Cir. 1999) (the district court "has a separate obligation . . . to make independent factual findings regarding relevant conduct for sentencing purposes").


## STIPULATIONS MADE BY THE DEFENDANTS AS PART OF THEIR PLEAS WITH THE GOVERNMENT

In this case, the parties have made a number of stipulations. Some of those relevant stipulations are extracted below.[8] Others stipulations will be addressed and referenced in other parts of this Motion where most appropriate.

I.      Purdue Frederick Company (Purdue)

Specific provisions include:

    A.  3. b. (1) that the payment to the Government of $100,615,797.25 "shall satisfy Purdue's obligation to make restitution under the plea agreement;"

    B.  3 b. (3) that "The parties agree and stipulate, pursuant to 18 U.S.C., § 3663(a)(1)(B)(ii), that no other restitution should be ordered;"

---

[8] Jane Doe will comment on these stipulations as well as other related issues which the Court should consider vis-à-vis her rights. *Infra.*

C. 3. d. $130,000,000.00 "some or all of which have been paid by the date of the entry of the guilty plea" for compensation and settlement of private civil liabilities related to OxyContin. Any of this amount unpaid after two years will be paid to the United States Treasury."

D. 3. a. (2) a fine of $500,000.00 (Immediate payment)

E. Other monetary penalties as follows:

- 3. a. (1) $3,087,277.60 to Federal and State Medicaid programs (immediate payments for Medicare rebates).

- 3. a. (3) $20,000,000.00 to Virginia Prescription Monitoring Program (immediate payment).

- 3. a. (4) $5,300,000.00 to Virginia Medicare Fraud Control Unit (immediate payment).

- 3. a. (5) $151,100,000.00 as directed by the United States Attorney's Office (immediate Payment towards total forfeiture of $276,100,000.00).

- 3. b. (2) $59,384,202.75 to States.

- 3. c. $90,000,000.00 forfeiture (6 month payment) and $35,000,000.00 (12 month payment) toward total forfeiture of $276,100,000.00.

- 3. f. $5,012,722.40 in monitoring costs.

- 2. § 2B1.1.1(b)(9)(C) Enhancement for the offense being committed through mass marketing. *See* U.S.S.G. 2B1.1 (b)(2)(A).

F. 6. "With the exception of the situations set worth above, PURDUE does not waive its right to argue against admissibility under any ground

permitted under federal or state rules of evidence in any other proceeding." (The exceptions being related to criminal proceedings.)

II.     Howard R. Udell

Specific provisions include:

    a.   "The parties agree and stipulate that restitution is not applicable to my conviction."

    b.   Disgorgement of $8,000,000.00 to Virginia Medicaid Fraud Control Unit.

    c.   Fine of $5,000.00.

III.    Michael Friedman

Specific provisions include:

    a.   "The parties agree and stipulate that restitution is not applicable to my conviction."

    b.   Disgorgement of $19,000,000.00 to Virginia Medicaid Fraud Control Unit.

    c.   Fine of $5,000.00.

IV.     Paul D. Goldenheim

Specific provisions include:

    a.   "The parties agree and stipulate that restitution is not applicable to my conviction."

b. Disgorgement of $7,5000.00 to Virginia Medicaid Fraud Control Unit.

c. Fine of $5,000.00.

## SPECIFIC RIGHTS UNDER 18 U.S.C. § 3771 (A)

The CVRA is a new law designed to empower victims to have a voice in federal criminal proceedings. *See Kenna v. District Court*, 435 F.3d 1011, 1013 (9th Cir. 2006) ("The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children – seen but not heard. The [CVRA] sought to change this by making victims independent participants in the criminal justice process.") Yet many practitioners and judges have yet to experience a victim asserting a right to participate with or without counsel in a criminal case. There is much for practitioners and judges to know about the participatory rights of crime victims in federal criminal cases, *e.g., What Practitioners and Judges Need to Know Regarding Crime Victims' Rights in Federal Criminal Proceedings,* 19 Fed. Sent'ing Rept, 21-28. In this case, Victim, Jane Doe asserts the following regarding her rights provided under 18 U.S.C. §3771(a):

> *(1) The right to be reasonably protected from the accused.*
>
> *(2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.* To date, Jane Doe has not received any notice. To the extent that she ascertained on her own the hearing on July 20, the Court

should not find that to be timely notice for her to adequately prepare and make arrangements to personally attend.[9]

(3) *The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.*

(4) *The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.*

For the Court's consideration regarding acceptance of the plea and possible sentencing, Jane Doe submits (i) her victim impact statement; (ii) her restitution affidavit; (iii) this motion and the points raised herein; (iv) any argument and allocution the Court allows her counsel to make on this motion and/or at the hearing on July 20, 2007; and (v) at an evidentiary hearing regarding restitution at a hearing if the Court deems her submission insufficient material to establish restitution.

Jane Doe asks to be reasonably heard regarding the points set forth in this Motion. Matters for the Court's consideration and not considered with regard to other specific rights include:

*Improper or incomplete sentencing levels under the guidelines*

---

[9] Despite only recently becoming aware of this case on her own, not residing near the Court, having only limited funds, and being addicted to OxyContin, Jane Doe has made extraordinary efforts for to obtain pro bono counsel in order to be heard by this Court before the July 20, 2007 hearing scheduled by the Court.

Regarding her right to be heard, Jane Doe asks the Court to make findings [10] regarding the following:

I. U.S.S.G. § 2B1.1(b)(1)(P). As the offense involves a loss of over $400,000,000, the stipulation regarding Purdue improperly omits and/or fails to add a 30 level increase over the base level. A base level of 6 under the stipulation indicates only a loss of less than $5,000.00.

II. U.S.S.G. § 2B1.1 (b) (2). Because the offense involved 250 or more victims, the stipulation regarding Purdue improperly omits and/or fails to add a 6 level increase for more than 250 victims rather than the 2 level increase for mass-marketing.

III. U.S.S.G. § 3A1.1. The stipulation regarding the individual defendants (and Purdue if there is only an increase for mass-marketing and not for more than 250 victims) improperly omits and/or fails to include a 7 level increase which should be added as follows: 3 levels because the victims in this case had a disability which required them to use OxyContin under U.S.S.G. § 3A1.1 (a); 2 levels because the defendant knew or should have know the victims would be vulnerable victim who would have physical or mental condition. U.S.S.G. § 3A1.1 (b) (1); and a 2 level increase because the offense involved a large number of vulnerable victims under U.S.S.G. § 3A1.1 (b) (2). Jane Doe was a vulnerable victim because of her fibromyalgia and the concomitant need for pain medication.

---

[10] The Court should allow access to the presentencing report regarding factors used or omitted in calculation of the guideline sentencing range. *Infra.*

IV.     For all defendants, an upward departure under U.S.S.G. § 5K2.2 regarding

physical injuries, U.S.S.G. § 5K2.3 regarding extreme psychological

injuries, and U.S.S.G. § 5K2.14 regarding public welfare.  For the

individual defendants, an upward departure under U.S.S.G. § 5K2.5

regarding property loss.

*(5) The reasonable right to confer with the attorney for the Government in the*
*case.*

Neither Jane Doe, nor her attorneys, have had the ability to confer with the

attorney for the Government in this case.  This failure to confer is especially

relevant regarding restitution both in terms of the amount of restitution and the

proposed distribution of the restitution, factors used or omitted in determining the

guideline sentencing range, and any proposed sentence for the defendants.   While

the Government admits there are too many victims to notify, the Government has

certain obligations under the CVRA.  The Government cannot viably assert it

cannot confer with the victims they have become aware of up to, and including,

the time of the sentence.  Before proceeding, this Court needs to ascertain that the

Government has conferred with the victims, including Jane Doe, and if not the

Court must take the appropriate action before proceeding.  *United States v.*

*Heaton*, 458 F. Supp. 2d 1271 (D. Utah 2006).

*(6) The right to full and timely restitution as provided in law.*

*Restitution in General*

Jane Doe as a victim has the *right* to restitution. The proposed plea and sentence provide neither full nor timely restitution. The CVRA provides victims with the right to full and timely restitution as provided by law. There are a number of restitution provisions established by law. Under 18 U.S.C. §3771(a)(6), a victim now has a property right to full and timely restitution. As a victim with a property right to restitution, due process protections apply. Thus under the 5th Amendment to the United States Constitution, victims have due process rights regarding restitution. *United States v. Perry*, 360 F.3d 519, 525 (6th Cir. 2004) (describing Congress' intent for the MVRA to protect the rights of all individuals, including victims, in a manner consistent with due process requirements).

The enactment of the CVRA demonstrates Congress' intent that restitution is now a right and property interest of the victim. Accepting the plea and destroying Jane Doe's property right to restitution would violate her due process rights.

Under 18 U.S.C. §3553(a)(7) regarding imposition of a sentence, "The court in determining the particular sentence to be imposed, shall consider – the need to provide restitution to any victims of the offense.

Restitution provisions the Court must consider include the following:

1. 18 U.S.C. §3663A (MVRA)
2. 18 U.S.C. §3663 (VWPA)

3.  18 U.S.C. §3563 (Restitution to a victim as a condition of probation of the offense under section 3556, but not subject to the limitations of 3663(a) or 3663A(c)(1)(A)).

4.  U.S.S.G. §8B1.2 (Trust fund for restitution for harms resulting from crimes).

18 U.S.C. §3556 is applicable regardless of whether restitution is under §§3663A, 3663, or 3563 and it requires that the procedures under §3664 apply to all orders of restitution under the section. This Court must review the restitution proposed under the plea and any other restitution available under law to victims in the context of a victims' right to restitution under the CVRA.

*Question by the Court Regarding Restitution to Individual Victims*

The Court inquired of the Government in Question 1: "*The Plea Agreements preclude court-order restitution to any of the individual victims of the crimes charged, such as the cost of the medical care and rehabilitation. As stated in the Plea Agreement, the parties rely on the provisions of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663(a)(1)(b)(ii), which provides that the complications and prolongation of the sentencing process resulting from the fashioning of an order of restitution may outweigh the need to provide restitution. State the facts that support the application of this provision.*"

The Governments response to Question 1 is wrong both legally and factually and the Court should so find. The result is attributable to the Government's failure to use its best efforts as required under 18 U.S.C. §3771(c)(1). *Supra.* Preliminarily, it is not the

obligation or right of the Government and Defense Counsel to stipulate in a plea agreement that that the complications and prolongation of the sentencing process ,resulting from the fashioning of an order of restitution, may outweigh the need to provide restitution.

Had the Government complied with it good faith obligations under the CVRA, any victim claiming restitution could have been referred to the United States Probation Office as part of the Court's requirement to order the probation officer to include the information in a pre-sentence report or in a separate report. *See* 18 U.S.C. §3664. Under 18 U.S.C. §3664(a), it is the probation agent's obligation to inform the Court "[i]f the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable."

Had the Government made any verifiable attempt to identify victims, the probation officer could have requested, not earlier than 60 days before sentencing, the names of any victims with a listing of claimed restitution amounts. 18 U.S.C. §3664(d)(1).[11] The probation officer could have provided any victim with an affidavit form to allow the victim to file the affidavit. 18 U.S.C. §3664(d)(2). The Court could have accepted the affidavits or require additional documentation or hear testimony. 18 U.S.C. §3664(d)(4). If the victims' loses are not ascertainable within 10 days of sentencing, the Court could, and should, set a hearing up to 90 days after sentencing.

Other options are also available to the Court. The Court can refer any issue regarding a proposed order to a magistrate judge or special master. 18 U.S.C.

---

[11] In light that the information was filed May 10, 2007, it was unlikely that there could have been the 60 period.

§3664(d)(6). Under U.S.S.G. §8B1.2, the Court has the ability to create a trust fund to address the expected harm. In fact the Commentary of 18 U.S.S.G. § 8B1.2 discusses FDA cases as an example. It is reasonable for the Court to consider such a fund for professional assistance to those addicted to OxyContin, those or harmed by it, or otherwise in need of counseling or drug rehabilitation.

The Defendants also elected to respond even though the Question 1 was directed to the Government. Their response is without merit. Claiming that there are no victims contradicts the stipulation that parties relied on that the provisions of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663(a)(1)(b)(ii), which provides that the complications and prolongation of the sentencing process resulting from the fashioning of an order of restitution may outweigh the need to provide restitution. The defendants attempt to cite various civil cases where they asserted various defenses in defending certain actions over OxyContin and the alleged proof a victim would have to raise to obtain restitution in this Court. Moreover, the Defendant's response here is inconsistent with Purdue's answers to the Court's questions 13 and 14, indicating civil agreements to pay individual victims for misbranding to individual victims who were personally injured.

In this case, Purdue has stipulated for a guideline enhancement for mass-marketing. Purdue and the individual defendants cannot reasonably continue to assert that its marketing did not intend to induce a large number of natural persons (consumers) to purchase OxyContin, per the terms of the mass-marketing guideline, for which they have stipulated. Mass-marketing is intended to reach the masses. To say that it was not

foreseeable that those vulnerable individuals who were in pain would seek to use OxyContin belies the mass-marketing strategy adopted by Purdue, with an intent to defraud those who would use OxyContin as admitted in the plea. In making these arguments, the defendants have intended to defraud this Court by continuing the same wrongful actions which have caused these charges to be filed. If they persist, the defendants should not be granted acceptance of responsibility and their conduct approaches—if not reaches—a level of obstructing justice.

*Stipulations and Proposed Agreements Which Should Be Rejected or Modified*

Regarding her right to be heard, Jane Doe asks the Court to find as follows:

I. The parties to the case allege that the $130,000,000.00 is reserved for civil settlements as a form of restitution. See Governments response to Court Question 1. This is not and cannot be deemed restitution under federal law. A restitution order does not require one to settle and release in order to obtain compensation. Restitution is for compensatory damages and will reduce any amount later recovered in a civil proceeding. 18 U.S.C. §3664(j)(2). Moreover in this case, Jane Doe sought to find an attorney to represent her against, but she could not find one willing to represent the "little guy" against the corporate giant.[12] To believe that the Defendants do not intend to continue to litigate cases

---

[12] Even assuming the $130,000,000.00 was a viable means to compensate individual victims which it is not, the provision in the agreement that any monies will be paid to the United States Treasury if not expended within 2 years is a farce and should be rejected as unfair to Jane Doe. The likelihood of filing an

is incorrect. Despite the requirements of 18 U.S.C. §3664(l) providing that a conviction giving rise to a restitution order shall estop the defendants from denying the essential allegations in a subsequent civil action, Purdue has inserted a stipulation that, contrary to federal law, they are not precluded from arguing the admissibility of the conviction is civil proceeding. The stipulations and agreements are contrary to federal law and should be rejected.

II. U.S.S.G. §5E1.1(c) and 8B1.1(c). Regarding restitution and a fine for a defendant, a court is required to order that any money paid by the defendant shall first be applied to satisfy the order of restitution. The proposed plea/stipulations are contrary to the U.S.S.G. §8B1.1. as the fine is paid immediately and the restitution claims of Jane Doe is ignored. The Court should reject any part of the agreement that allows a fine to be paid before restitution to a victim.

III. 18 U.S.C. §3572. Even beyond the provision related to a fine, the Court should reject the agreement because other monetary penalties are given priority over restitution. Regarding restitution and a fine or other monetary penalty to defendants, "the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution." The proposed plea/stipulation are contrary to 18 U.S.C. §3572 as the payment of the fines and other monetary penalty substantial impair Jane Doe's ability to have Pudue, and the individual defendants, make

---

action, going to trial, appeals, and obtaining funds against a corporate giant is improbable at best. If a victim assigned the victim's interest in restitution, 18 U.S.C. §3664(g)(2), there is authority to have the funds credited to the Crime Victims' Fund in the Treasury. But since some or all of these funds have already been paid, there is little or no likelihood that any money will be available under this provision.

payments to her (whether as restitution or as a separate civil remedy) and therefore should be rejected.

IV. U.S.S.G. §5E1.1(a) and U.S.S.G. §8B1.1(a) . Full restitution is also required for identifiable victims under the Guidelines. Unless provisions are made to pay Jane Doe restitution, the pleas should be rejected.

V.     18 U.S.C. §3664(j)(1). The proposed stipulations provide for funds to be paid to governmental and non-governmental insurance or other sources for the cost of OxyContin. If government and private insurance providers are provided monetary compensation for what they reimbursed victims or paid on behalf of victims, individual purchasers should likewise be compensated under the priority established by law. The Court is required to pay the victim full restitution before any restitution is paid to the provider of the compensation. *See United States v. Alalade*, 204 F.3d 536 (4th Cir. 2000) (discussing Congressional intent, insurance proceeds to a victim, and forfeiture on behalf of a defendant in context of a victim receiving full restitution). Jane Doe, for most of the time she was on OxyContin, paid out-of-pocket for the cost of OxyContin. She also has counseling expenses and will have detoxification expenses as a direct result of the misbranding. The proposed plea should be rejected unless Jane Doe is paid her restitution as a priority—as required by law.

VI.     Jane Doe does not have sufficient information regarding whether the total amount of restitution, fines, and other monetary sanction is sufficient. The court should make that determination after allowing counsel for Jane Doe to have

access to appropriate parts of the pre-sentence report. In fairness to Jane Doe, as required under the CVRA, the Court should make available to Victim's counsel those parts of the pre-sentence investigation relevant to Jane Doe's assertion of rights. *Kenna v. United States Dist. Court*, 453 F.3d 1136 (9th Cir. 2006). Under Federal Rules of Criminal Procedure, Rule 32 (d)(2)(D), the pre-sentence report must contain information sufficient for a restitution order "when the law provides for restitution." The Court should make a finding to allow Jane Doe to have access to the appropriate parts of the pre-sentence report, in order to be reasonable heard.

### *Viable Options for the Court*

For the reasons stated herein, the Court should not accept the plea, sentence, and the restitution as stipulated contrary to law and fact. Alternatively, Jane Doe proposes the following:

A.      If the Court finds the amount of monetary sanctions to be sufficient, the Court should allow *all* victims to make a claim and distribute the funds to victims in the first priority as required under law.

B.      If the Court finds the amount of monetary sanctions to be insufficient to individual victims obtaining restitution, the Court should determine the appropriate means to properly compensate individual victims.

C.      Assuming the Court determines a reasonable overall monetary sanction, the Court could establish a procedure similar to a disinterested stakeholder interpleader which would not delay the criminal proceedings. The defendants

would pay their monies into the Court. The Court could use either a magistrate judge or special master who would follow the appropriate provisions of law providing priority to individual victims as cited herein. *See* 18 U.S.C. §3664(d)(6). All remaining funds would thereafter be divided, as appropriate, between others claiming proceeds.

*(7) The right to proceedings free from unreasonable delay.*

*(8) The right to be treated with fairness and with respect for the victim's dignity and privacy.*

The Court needs to reject the proposed agreement as unfair to Jane Doe unless restitution to her is included as a priority, as provided by law. Victims will be denied the right to fairness under the plea and sentence as they are ignored and not considered as interested participants who are entitled to full and timely restitution. The plea agreement and proposed sentence are not fair to the victims who paid for their own OxyContin and for those who have become addicted to OxyContin as a direct result of the defendants' actions. But for the misbranding, victims like Jane Doe would not have suffered.

Assume that this was a civil class action suit and the Government was counsel for the class of individual victims of the actions of the defendants. Would any court approve a settlement where the individual victims receive zero cents on the dollar and the Government keeps more than the lion share of the funds? The answer is no! While the Government is not the counsel for the victims, they do have a good faith duty to the victims of this offense and they have violated their duty. However it is also the Court's obligation to ensure the rights of victims. Therefore, the Court should reject the

agreement as unfair to victims. This result is also mandated by 18 U.S.C. §3572(b) which directs that the Court shall not impose fines or other monetary penalty which would impair a defendant's ability to make restitution to a victim. By not ordering restitution, requiring victims to obtain counsel, and pay attorneys fees to sue the defendants while filling the coffers of the Government, the Court has no choice but to reject the plea agreement or modify the plea agreement.[13]

Respectfully Submitted,

_Louis Dene_

Louis Dene
DENE & DENE, P.C.
138 Court Street, N.E.
Abingdon, VA 24210
(276) 628-8644

Dated: July 18, 2007

---

[13] If the Court modifies the plea agreement to confirm to law, the defendants could withdraw the plea. Under U.S.S.G. § 6B1.3 however, if the Court's modification of the agreement does not change the total economic sanction, but only redirects the disbursements of the financial sanctions, the defendants might not choose to withdraw their plea since the pleas are clearly substantially benefit the defendants, (e.g. The individual defendants are not required to be incarcerated under the plea). Withdrawing of the plea could result in greater economic sanctions against all of the defendants and significant jail time for the individual defendants.